**In the United States District Court
For the Eastern District of Texas
Beaumont Division**

| | | |
|---|---|---|
| **Victory Medical Center Beaumont, LP, and Neil Gilmour, Trustee for the Grantor Trust of Victory Parent Company, LLC** *Plaintiffs* | § § § § § | |
| v. | § § | Civil Action No. 1:17-cv-00048 |
| **Connecticut General Life Insurance Company and Cigna Corporation** *Defendants* | § § § § | |

**Plaintiffs' Original Complaint**

Plaintiffs Neil Gilmour, Trustee for the Grantor Trust of Victory Parent Company, LLC, and Victory Medical Center Beaumont, LP ("Victory Beaumont") file this Original Complaint, seeking, among other things, to avoid fraudulent transfers by Victory Beaumont to Defendants Connecticut General Life Insurance Company and Cigna Corporation and recover the value of such transfers from these Defendants.

**Jurisdiction and Venue**

1. This Court has jurisdiction of this lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. The statutory and legal predicates for the relief sought are Tex. Bus. & Com. Code §§ 24.001, *et seq.*; and Texas common law.

**Parties**

4. Neil Gilmour is the trustee for the grantor trust of Victory Parent Company, LLC.

5. Victory Parent Company, LLC was a Texas limited liability company that filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 12, 2015, Case Number 15-42384.

6. Victory Medical Center Beaumont, LP is a Texas limited partnership.

7. Connecticut General Life Insurance Company is a Connecticut corporation doing business in the State of Texas. It may be served with process through its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

8. Cigna Corporation is a Connecticut corporation doing business in the State of Texas. It may be served with process by delivering a copy of the summons and complaint to David Cordani, President/CEO and Director, 900 Cottage Grove Road, Wilde Building, Bloomfield, Connecticut 06152.

**Standing**

9. The Trustee has standing to pursue causes of action on behalf of Victory Parent Company, LLC under the Texas Fraudulent Transfer Act. At the time of the transfers alleged below, Victory Beaumont was indebted to Victory Parent Company, LLC in the amount of at least $10 million.

**Factual Background**

10. To a significant degree, Cigna[1] put Victory Beaumont[2] out of business. It did so by engaging in oppressive, unfair, and illegal claims practices over a two-year period, including but not limited to fabricating reasons to delay—and even refuse—payment on approximately $5 million of healthcare service claims submitted by Victory Beaumont. As a result, Victory Beaumont

---

[1] The term "Cigna" refers to Defendants Connecticut General Life Insurance Company and Cigna Corporation, collectively.

[2] Victory Beaumont's last date of operations was September 18, 2015.

2

suffered serious cash flow problems. In a last-gasp futile effort to save itself, in March/April 2015, Victory Beaumont agreed to settle with Cigna for a fraction of the money owed. It was too little, too late as Victory Beaumont was out of business less than six (6) months later.

11. The Trustee now brings this lawsuit to recoup the losses caused by Cigna's actions. The Trustee also requests that the Court avoid and/or rescind the settlement agreement by which Victory Beaumont transferred claims of approximately $5 million (with a value of no less than $3 million) in exchange for approximately $700,000 in payments from Cigna.

**Victory Beaumont treated Cigna Subscribers**

12. Victory Beaumont operated a medical center in the greater Beaumont area. Over several years, Victory Beaumont treated hundreds of patients who were insured or covered by healthcare benefit plans and policies of insurance provided or administered by Cigna (the "Plans").[3] With respect to matters relevant to this proceeding, Victory Beaumont spent millions of dollars treating Cigna Subscribers and invoiced Cigna approximately $5 million as an out-of-network provider. Cigna did not pay anything on these claims until Victory Beaumont settled for pennies on the dollar in March or April of 2015. All invoicing and claim submissions were done through Victory Beaumont's back office located in The Woodlands, Texas.

**Cigna treats in-network and out-of-network providers differently**

13. Cigna is in the business of providing or administering health insurance policies and/or health care benefit plans. In plain English: Cigna pays for healthcare services provided to individuals who have insurance coverage maintained and/or administered by Cigna, either through

---

[3] There is a technical distinction between individuals for whom Cigna provides health insurance (i.e., Cigna pays the cost of healthcare from its own funds pursuant to an insurance policy) and those for whom Cigna administers health insurance policies provided by others (i.e., Cigna approves claims for payment from the funds of other entities, such as an employer or union). That distinction is immaterial to the present dispute. Both categories of individuals will be referred to as "Cigna Subscribers."

3

a Cigna issued insurance policy or a healthcare benefit plan administered by Cigna. Potential healthcare providers are categorized as either "in-network" or "out-of-network" and Cigna provides different levels of benefits and payment mechanisms for each category. For example, both in-network and out-of-network providers bill Cigna according to their Chargemaster[4], but in-network providers have agreed to certain pre-negotiated discounts while out-of-network providers have not.

14.     Cigna prefers that its insureds seek healthcare services from in-network providers, in part because these providers are subject to a preexisting arrangement under which Cigna agrees to pay (and the in-network provider agrees to accept) certain pre-negotiated discounted amounts for services provided to Cigna Subscribers. The discounted amounts are designed to reflect the benefits in-network providers receive as members of Cigna's network, such as in-network providers can be assured of timely and predictable payment and greater volume of patients. Generally speaking, Cigna agrees with its insureds (i.e., the Cigna Subscribers) to pay all charges (at the pre-negotiated discounted rates) from an in-network provider above the insured's deductible.

15.     Out-of-network providers have no preexisting arrangement with Cigna, which has a few important consequences. First, out-of-network providers have not agreed to discounted rates. Second, because Cigna does not want to pay out-of-network billed charges, often Cigna must incur the time and expense of negotiating the payment (or, more often, contracting with a third party to negotiate with the out-of-network provider). Third, out-of-network providers are free to "balance bill" patients for any amount not paid by Cigna. In most cases concerning out-of-network providers, Cigna agrees with the Cigna Subscribers to pay a portion of the charges above the Cigna Subscribers' deductible, leaving the Cigna Subscribers responsible for the remainder.

---

[4] The "Chargemaster" is the main fee schedule maintained by a healthcare provider and does not reflect any discounts or negotiated rates.

16. At all relevant times, Victory Beaumont was an out-of-network provider and submitted bills to Cigna according to its Chargemaster.

**Cigna's scheme to refuse payment on Victory Beaumont's claims**

17. Cigna has spent the last few years trying to justify not paying out-of-network providers. The central scheme used by Cigna to refuse payment to Victory Beaumont is based on allegations of fee-forgiveness. That theory has been litigated and rejected by courts in the 5th Circuit.[5]

18. Fee-forgiveness arguably occurs when a healthcare provider fails to attempt to collect co-pays, co-insurance, or deductibles from the insured. Cigna believes that some healthcare providers engage in a "fee-forgiveness protocol" as part of their business model. Cigna claims that doing so is insurance fraud. If Cigna decided that a particular healthcare provider had engaged in a "fee-forgiving protocol," then Cigna asserted that it had no obligation to process (much less pay) that provider's claims.[6] Cigna unilaterally decided that Victory Beaumont was engaged in a "fee-forgiveness protocol."

19. There are two big problems with Cigna's assertion. First, Cigna had no basis in any policy, plan, or elsewhere, to outright refuse to process claims. Second, Cigna seems to have decided that many out-of-network providers engaged in a "fee-forgiving protocol," whether evidence existed to support its contention or not. In this case, as in the *Humble Surgical Hospital* case, Cigna refused to process or pay Victory Beaumont's claims based on an unsupported and unjustified assertion that Victory Beaumont was engaged in a fee-forgiving protocol. Cigna was

---

[5] *See, e.g., North Cypress Medical Center Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015); *Connecticut General Life Insurance Co. v. Humble Surgical Hospital, LLC*, No. 4:13-cv-3291, 2016 WL 3077405 (S.D. Tex. June 1, 2016) (appeal pending) (awarding the hospital more than $11 million on its counterclaim against Cigna for underpayment of claims).

[6] *Humble Surgical Hospital*, 2016 WL 3077405 at *5.

5

wrong and knew it was wrong, but the damage was done. Moreover, even if Victory Beaumont did engage in "fee-forgiveness" (which it did not), such would not justify Cigna's failure to adhere to the requirements of the Plans in processing and paying the claims submitted by Victory Beaumont.

20. In violation of its duties under ERISA and state law, Cigna failed and refused to process claims or pay Victory Beaumont for health care services that Victory Beaumont provided to patients covered by the health care benefit plans and policies of insurance provided or administered by Cigna (i.e., Cigna Subscribers). In most, if not all, cases, Cigna was the administrator, fiduciary, relevant party-in-interest, and/or the obligor for the Plans. Cigna was responsible for making final benefit decisions and the extent of payment on claims submitted by Victory Beaumont. For all intents and purposes relevant to this proceeding, Cigna essentially was the Plans.

21. For a certain period of time, Cigna processed and paid Victory Beaumont's claims with relatively few disputes. On average, Cigna reimbursed Victory Beaumont at rate of approximately 60% of Victory Beaumont's billed charges. But this course of dealing came to an abrupt halt in the Spring of 2013.

22. Under the Plans, Cigna was required to promptly pay benefits for out-of-network services based on the rates provided in the Plans. Depending on the particular Plan, those rates included:

- Usual, customary and reasonable rate ("UCR"), or a percentage of UCR;
- Cigna's maximum reimbursable charge ("MCR");
- A percentage of Medicare rates, which varied by Plan; and
- Other rates at otherwise defined in the applicable Plans.

23. Victory Beaumont routinely and customarily obtained from its patients and Cigna Subscribers an assignment of benefits and a personal guarantee to cover any balance due for healthcare services after Victory Beaumont was reimbursed by Cigna the amount allowable under the applicable Plan under which a claim was submitted. Specifically, Victory Beaumont's admission paperwork included an irrevocable assignment of insurance benefits. The paperwork included with Victory Beaumont's claim submissions to Cigna notified Cigna that Victory Beaumont acquired an assignment of benefits for each claim submitted.

24. As noted above, for a period of time, the above-described claims process worked just fine. There were minor disputes but nothing extraordinary or on a wholesale basis. This all changed in and around April, 2013.

25. This is when Cigna began wholesale "flagging" Victory Beaumont claims and, as a result, Victory Beaumont claims by-passed Cigna's claims processing department and its usual claims processing methods and instead such claims were directed by Cigna to its in-house Special Investigation Unit ("SIU") for investigation. Cigna took similar action with respect to certain other out-of-network hospitals in Texas.

26. From April, 2013 to March, 2015, Victory Beaumont's claims continued to languish in SIU and were not processed or paid at all. For a substantial period of time, Victory Beaumont was unaware of the fact that its claims were directed to SIU and bypassed Cigna's claims processing department. Effectively, Cigna strangled Victory Beaumont's cash flow. After numerous excuses and attempts to deceive Victory Beaumont regarding the real reasons its claims had not been processed or paid, Cigna finally conceded that the reason it was not paying Victory Beaumont's claims was Cigna's suspicion that Victory Beaumont was engaged in the practice of fee-forgiveness. In truth, Victory Beaumont was not engaged in fee-forgiveness and the entire

"fee-forgiveness" sham perpetrated by Cigna has been completely debunked by the 5th Circuit. Cigna's real motives for directing Victory Beaumont's claims to SIU were (i) to force Victory Beaumont to become an in-network facility on terms dictated by Cigna, and (ii) to pad Cigna's pockets as it received extra compensation based on "savings" to certain Plans regardless of how Cigna was able to achieve such savings[7]. Cigna had a huge conflict of interest that was not disclosed to Victory Beaumont or the Cigna Subscribers and this conflict of interest drove Cigna's unreasonable and inappropriate administration of claims submitted by Victory Beaumont.

27. Specifically, Cigna, by and through William M. Welch (Cigna's Associate Chief Counsel at the time) and other employees and agents authorized to speak on its behalf, notified Victory Beaumont in August 2013 that it had conducted an investigation of claims submitted by Victory Beaumont, that it had determined that Victory Beaumont had engaged in a "fee-forgiveness protocol," and that Cigna had the right to deny any and all claims submitted by Victory Beaumont. Cigna further represented that it had the right to demand additional documentation and that it could withhold payment until it was satisfied that Victory Beaumont had not engaged in fee-forgiveness. All these statements were false. Cigna had no evidence that Victory Beaumont had engaged in a "fee-forgiveness protocol," nor did Cigna have the right to freeze claim-processing, withhold payment, deny claims, or demand additional documentation.

28. As punishment to Victory Beaumont for the "fee-forgiveness protocol" Cigna fabricated, Cigna took the position that it would pay Victory Beaumont only in accordance with what the Cigna Subscribers paid, rather than the amount owed for the services under the Plans, and Cigna totally disregarded the provisions of the Plans in the process. Under this so-called

---

[7] Often Cigna entered into Administrative Services Only Agreements ("ASO Agreements") with Plans and Plan sponsors in which Cigna was paid extra compensation based on the "savings" Cigna was able to generate for the Plans.

"proportionate share analysis," Cigna decided to treat proof of payment by the Cigna Subscribers as "due proof of loss." Cigna declared that once it received proof that its insured paid his or her share, then Cigna would pay its share. If Cigna decided that Victory Beaumont's proof of payment was unsatisfactory, then Cigna would simply refuse to process or pay the claim submitted by Victory Beaumont. Cigna applied its new unilateral proportionate share analysis both to all future claims and to all then-pending claims. In short, Cigna entrusted itself with sole discretion to decide whether and how much to pay Victory Beaumont for services provided to Cigna Subscribers contrary to the provisions and requirements of the Plans. Moreover, Cigna failed to inform the Cigna Subscribers of its decision to change the manner in which it processed claims under the Plans.

29. As it turns out, Cigna was not satisfied with any proof of payment Victory Beaumont submitted. In fact, Cigna refused payment of claims even in situations where the subject Cigna Subscriber had met his/her total out-of-pocket expense requirements. For almost two years, Cigna refused to pay any of Victory Beaumont's $5 million in claims based on its fabricated "fee-forgiveness protocol" rationale, robbing Victory Beaumont of much-needed cash flow and eventually pushing the hospital out of business.

30. Once Cigna placed Victory Beaumont's claims with SIU and effectively put a stop to reimbursements, Cigna did not seriously consider the propriety and quality of Victory Beaumont's services to Cigna's Subscribers. Cigna ignored Victory Beaumont's billing calculations even though they were based on the Chargemaster, UCR and/or MCR. Cigna failed to utilize an authoritative or recognized database to determine how to pay Victory Beaumont's claims. Victory Beaumont's charges for its services to Cigna's Subscribers and submitted to Cigna were usual, customary and reasonable.

31. Cigna's method of processing (or lack thereof) Victory Beaumont's claims was disingenuous and arbitrary, as it was focused on accomplishing a pre-determined purpose -- denying Victory Beaumont's claims. Cigna's arbitrary method ignored history of claim processing between Cigna and Victory Beaumont. Moreover, Cigna failed to follow the requirements of the Plans and instead set upon a scheme to drive Victory Beaumont to its knees with the goal of forcing Victory Beaumont to become an in-network facility on Cigna's dictated terms and achieving extra compensation by saving the Plans millions of dollars at Victory Beaumont's expense.

32. Not only did Cigna fail to process Victory Beaumont's claims pursuant to the Plans and ERISA, it also denied Victory Beaumont a meaningful opportunity to appeal claim denials and/or underpayments. Victory Beaumont was entitled to a full and fair review of its claims, both at the claims processing stage and at the appeal review stage. Victory Beaumont received neither. In fact, there was no real claim processing procedure once a claim was directed to SIU.

33. To achieve its own goals, Cigna abused its discretion and handled Victory Beaumont's claims without a rational connection between the known facts and the decisions or between the found facts and the evidence. Cigna forfeited its objectivity, put itself in a clear conflict of interest position, arbitrarily and capriciously carried out its duties under the Plans, and violated its fiduciary duties of care and loyalty by making benefit determinations that favored its own pocket-book but did not consider UCR or conform to the Plans, all in violation of ERISA and the Plans. Cigna hijacked the plan administrator's role and subverted it for its own personal benefit. Cigna's conduct was the very definition of bad faith.

**Cigna finally succeeded in coercing Victory Beaumont to accept pennies on the dollar**

34. After withholding reimbursements for the better part of two years, Cigna succeeded in its plan to drive Victory Beaumont to its knees and finally Victory Beaumont agreed to a settlement that paid Victory Beaumont only a fraction of what Cigna rightfully owed. Cigna and

Victory Beaumont entered into a Settlement Agreement and General Release in March/April, 2015 (the "Settlement Agreement").  The Settlement Agreement was entered into by Victory Beaumont in The Woodlands, Texas.

35. Pursuant to the Settlement Agreement, the parties agreed that Victory Beaumont would become an in-network provider and Cigna would pay certain identified, previously denied claims at the new in-network rates Cigna forced upon Victory Beaumont.  As discussed above, in-network rates are discounted to take into account certain benefits that in-network providers receive.  Victory Beaumont did not receive any of those benefits during the two years Cigna withheld payment of Victory Beaumont's claims or after the Settlement Agreement was entered into.  The effect in this case was that Cigna paid a fraction of the value of Victory Beaumont's claims without Victory Beaumont receiving any benefits as an in-network provider.  Victory Beaumont eventually received approximately $700,000 on account of the claims it "gave up" in the Settlement Agreement in the total amount of approximately $5 million.  Based on historical reimbursement rates, Victory Beaumont should have received at least $3 million on account of such claims.

## Claims for Relief

36. With respect to each of the claims set forth below, all factual allegations set forth in paragraphs 9 through 35 above are incorporated and re-alleged in their entirety.

**Claim 1—Avoidance of the Settlement Agreement and recovery of constructively fraudulent transfers under Tex. Bus. & Comm. Code – (The Trustee)**

37. The Trustee of the Grantor Trust for Victory Parent Company, LLC seeks to avoid the Settlement Agreement.

38. Under Sections 24.008 and 24.005(a)(2) of the Texas Bus. & Commerce Code, the Settlement Agreement may be avoided and the Trustee may seek recovery against Cigna necessary to satisfy the Trustee's claim against Victory Beaumont up to the value of the transfers.

39. As set forth above, Victory Beaumont had claims against Cigna for underpayment (i.e., failure to pay at all) and breach of fiduciary duty with respect to approximately $5 million of health care claims. On March/April, 2015, Cigna agreed to pay certain claims submitted by Victory Beaumont at a fraction of the amount actually owed in exchange for Victory Beaumont agreeing to release Cigna from any further responsibility for payment of outstanding claims. In essence, Cigna forced Victory Beaumont to accept approximately $700,000 in full satisfaction of approximately $5 million in claims that had a value of no less than $3 million. In addition, the parties agreed that Victory Beaumont would become part of Cigna's network on terms Cigna forced Victory Beaumont to accept. Victory Beaumont received no benefit from this arrangement and was out of business within six (6) months of entering into the Settlement Agreement.

40. Victory Beaumont transferred property in exchange for less than reasonably equivalent value. Victory Beaumont was insolvent at the time of the transfer or became insolvent as a result of the Settlement Agreement.

41. At the time the Settlement Agreement was entered into, Victory Beaumont was engaged in business or a transaction, or was about to engage in business or a transaction (namely, running a capital-intensive hospital, including servicing the debt) for which any property remaining with Victory Beaumont was an unreasonably small capital.

42. At the time the Settlement Agreement was entered into, Victory Beaumont was indebted to Victory Parent Company, LLC by more than $10 million. Pursuant to Tex. Bus. & Comm. Code §§ 24.005(a)(2) and 24.008, the Trustee seeks to avoid the Settlement Agreement and to recover the value of the property transferred of at least $3 million.

**Claim 2—Declaration of Invalidity – Economic Duress**

43. Victory Beaumont requests a declaration that the Settlement Agreement is invalid because (i) Cigna acted in bad faith by invoking a fabricated fee-forgiveness protocol rationale and directed claims to its SIU to ensure that Victory Beaumont's claims would not be processed or paid and (ii) Cigna used economic duress to coerce Victory Beaumont to enter into Settlement Agreement.

44. Under Chapter 37 of the Texas Civil Practice & Remedies Code, the Court may determine any question of construction or validity arising under a written contract. Here, Cigna and Victory Beaumont were parties to a written contract (i.e., the Settlement Agreement). Victory Beaumont contends that the Settlement Agreement is invalid for two reasons. First, as set forth above, in bad faith Cigna invoked its fabricated fee-forgiveness protocol rationale and directed Victory Beaumont's claims to Cigna's SIU to ensure that they would not be processed or paid. Second, Cigna used economic duress to coerce Victory Beaumont to enter into the agreement.

45. A finding of economic duress requires a finding of five elements: (1) a party threatened or committed an act, without legal right to do so; (2) the threat or action was of such a character as to destroy the other party's free agency; (3) the threat or action overcame the other party's free will and caused it to do that which it would not otherwise do and was not legally bound to do; (4) the restraint caused by such threat was imminent; and (5) the other party had no present means of protection. *In re Davenport*, 353 B.R. 150, 204 (Bankr. S.D. Tex. 2006) (citing *Sudan v. Sudan*, 145 S.W.3d 280, 286 (Tex. App.—Houston [14th Dist.] 2004), rev'd on other grounds, 199 S.W.3d 291 (Tex. 2006) (per curiam); *Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W.3d 429, 443 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Dale v. Simon*, 267 S.W. 467, 470 (Tex. 1924)).

46. In the case at bar, Cigna withheld processing and payment on $5 million of claims and threatened to continue to withhold processing and payment when it had no legal right to do so. Cigna placed Victory Beaumont's claims with its in-house SIU in violation of the Plans and in furtherance of its scheme to force Victory Beaumont to agree to go in-network on terms dictated by Cigna and achieve extra compensation for Cigna by "savings" it achieved for the Plans. Cigna's conduct and continued threats destroyed Victory Beaumont's free agency because Victory Beaumont had expended a substantial amount of money providing the services, expecting to get paid by Cigna, and Victory Beaumont needed the funds to continue operating. But for Cigna's conduct and continued threats, Victory Beaumont would not have entered into the Settlement Agreement. At that time, Victory Beaumont had no present means of protection.

47. Accordingly, Victory Beaumont requests that the Court enter an order invalidating the Settlement Agreement.

**Claim 3—Breach of fiduciary duty**

48. Victory Beaumont seeks to recover the damages caused by Cigna's breach of the fiduciary duties it owed to the Cigna Subscribers. Victory Beaumont, as assignee of the Cigna Subscribers' benefits and causes of action, has standing to assert this claim on their behalf.

49. The elements of a claim for breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and the defendant, (2) the defendant's breach of a fiduciary duty it owed to the plaintiff, and (3) either injury to the plaintiff or a benefit to the defendant as a result. *In re H&M Oil & Gas, LLC*, 514 B.R. 790, 814 (Bankr. N.D. Tex. 2014).

50. In the case at bar, Cigna owed Cigna Subscribers a fiduciary duty to discharge its obligations under the Plans exclusively in their best interest. When the Cigna Subscribers received healthcare treatment from Victory Beaumont, they executed valid and enforceable assignment of

benefits documentation, assigning to Victory Beaumont their rights and benefits under the Plans and causes of action for breach of fiduciary duty.

51. Cigna breached its fiduciary duty by wrongfully denying claims and withholding payment on those claims through its fabricated fee-forgiveness protocol rationale and directing Victory Beaumont's claims to its in-house SIU to ensure such claims would not be processed or paid. In addition to the reasons stated above, Cigna was also motivated by its intent to deny Cigna Subscribers their right to take advantage of out-of-network benefits for which they paid higher premiums than they would have paid for in-network benefits.

52. Cigna's breaches caused Victory Beaumont and the Cigna Subscribers injury in an amount equal to the difference between the amount owed on the claims and the amount Cigna eventually paid.

53. Accordingly, Victory Beaumont requests that the Court enter an order finding Cigna liable and awarding damages to Victory Beaumont in an amount to be proven at trial including, but not limited to, disgorgement of all amounts Cigna received from the Plans (including specifically any compensation Cigna received based on "savings" it generated for the Plans).

### Claim 4—Unjust Enrichment

54. Cigna benefited by receiving additional compensation by "savings" it generated for the Plans as a result of its bad faith, duress and taking undue advantage of its position of economic superiority over Victory Beaumont.

55. To the extent Cigna received additional compensation as a result of achieving "savings" in this manner, Cigna has been unjustly enriched at the expense of Victory Beaumont.

56. Victory Beaumont is entitled to a judgment against Cigna for the full amount of such unjust enrichment.

### Claim 5—Attorney's Fees

57. Victory Beaumont is entitled to recover its reasonable and necessary attorney's fees and expenses incurred in pursuing the claims set forth in this complaint. Further, the Trustee is entitled to its attorneys' fees incurred in bringing this claim under Tex. Bus. & Comm. Code § 24.013. Accordingly, Victory Beaumont and the Trustee request that the Court enter judgment finding Cigna liable and awarding Victory Beaumont and the Trustee attorney's fees and costs in an amount to be determined at trial.

### Claim 6—Exemplary Damages

58. Victory Beaumont is entitled to recover exemplary damages on its claim for breach of fiduciary duty. Accordingly, Victory Beaumont requests that the Court enter judgment finding Cigna liable and awarding Victory Beaumont exemplary damages in an amount to be determined at trial.

### Prayer

The Trustee and Victory Beaumont pray that this Court enter judgment finding Cigna liable on all claims; avoiding the Settlement Agreement; awarding the Trustee the value of the property transferred of at least $3 million; awarding Victory Beaumont actual and exemplary damages, attorney's fees, costs, and pre- and post-judgment interest; and awarding such other and further relief to which Victory Beaumont and the Trustee may be justly entitled.

Dated: January 31, 2017

Respectfully submitted,

**HAWASH MEADE GASTON NEESE & CICACK LLP**

*/s/ Walter J. Cicack*
Walter J. Cicack
State Bar No. 04250535
Jeremy M. Masten
State Bar No. 24083454
2118 Smith Street
Houston, Texas 77002
(713) 658-9001 - tel
(713) 658-9011 - fax
wcicack@hmgnc.com
jmasten@hmgnc.com
**Attorney for the Trustee and Victory Medical Center Beaumont, LP, Plaintiffs**

17