## UNITED STATES DISTRICT COURT      EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| VICTORY MEDICAL CENTER | § | |
| BEAUMONT, L.P., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:17-CV-48 |
| | § | |
| CONNECTICUT GENERAL LIFE | § | |
| INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendants Connecticut General Life Insurance Company and Cigna Corporation's (collectively, "Defendants") Motion for Judgment on the Pleadings (#42) (the "Motion"), wherein they seek to dismiss Plaintiff Neil Gilmour's, Trustee for the Grantor Trust of Victory Parent Company, L.L.C. ("Victory Parent"), sole remaining claim on the basis that Victory Parent is a signatory to the settlement agreement (the "Settlement Agreement"), because it signed the Settlement Agreement under its assumed name, Victory Healthcare. Victory Parent opposes the Motion (#45), arguing that there are disputed issues of material fact in the pleadings, particularly as to whether Victory Parent participated in the negotiation and execution of the Settlement Agreement (the "Response"). After considering the Motion, the Response, the pleadings, and the applicable law, the court is of the opinion that Defendants' Motion should be granted in part and denied in part.

I.    <u>Background</u>

Victory Medical Center Beaumont, L.P. ("Victory Beaumont") operated a medical center in the greater Beaumont area. In the course of its operations, Victory Beaumont treated hundreds

of patients insured by Defendants and invoiced Defendants as an allegedly out-of-network provider. Defendants paid Victory Beaumont's claims with few disputes until April 2013, when Victory Parent maintains that Defendants began bypassing Victory Beaumont's invoiced claims and submitting them to its Special Investigation Unit ("SIU") for investigation. In August 2013, Defendants informed Victory Beaumont that the SIU had completed its investigation and had discovered that Victory Beaumont had engaged in a "fee-forgiveness-protocol," in which a healthcare provider declines to collect payment from the insured for non-covered charges and seeks payment exclusively from the insurance company. Defendants claimed that, because of this protocol, they had a right to deny Victory Beaumont's invoiced claims initially and to request documentation supporting the claims. In light of this discovery, Defendants found Victory Beaumont's documentation unsatisfactory and denied all of its claims. The parties negotiated an agreement to resolve the payment dispute in or around March and April 2015, executing a written Settlement Agreement on April 27, 2015.

The Settlement Agreement represents that the parties "desire[d] to settle, compromise, and release all disputes between them . . . for good and valuable consideration." Doc. No. 42-1, at 1. Pages two through five of the Settlement Agreement detail Defendants' payment obligations and that such payment "irrevocably release[d] and forever discharge[d] Victory – Houston" from any actions whatsoever that Defendants may bring. Doc. No. 42-1, at 2-5. The Settlement Agreement continues to describe the release of any claims by Victory – Houston "whatsoever . . . relating to or arising out of" the Settlement Agreement. Doc. No. 42-1, at 5-6. The Settlement Agreement defines Victory – Houston as "Victory Healthcare, and its affiliates and subsidiaries, including Victory Medical Center – Houston, . . . Victory Surgical Hospital – East Houston . . . , and Victory Medical Center – Beaumont." Doc. No. 42-1, at 1.

Victory Parent filed suit against Defendants on January 31, 2017, alleging, among other claims, that the Settlement Agreement constituted a fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA").[1] Victory Parent argues that, prior to the execution of the Settlement Agreement, Defendants were responsible for paying approximately $3,000,000.00 in claims to Victory Beaumont, whereas under the Settlement Agreement, they agreed to pay only $700,000.00. As a creditor of Victory Beaumont, Victory Parent asserts a stake in the disparity between the funds owed and the funds paid in settlement. Victory Parent maintains that Defendants acted unscrupulously in negotiating an unreasonably low settlement with Victory Beaumont at a time when the latter was insolvent.

The crux of Defendants' argument in their Motion is that Victory Parent filed an assumed name certificate for signatory Victory Healthcare (the "Assumed Name Certificate"), which is also affiliated with Victory Beaumont by the express terms of the Settlement Agreement. The parties to the Settlement Agreement are Defendants and "*Victory Healthcare*, and its affiliates and subsidiaries, including Victory Medical Center – Houston, . . . Victory Surgical Hospital – East Houston . . . , and *Victory Medical Center – Beaumont*." Doc. No. 42-1, at 1 (emphasis added). Victory Parent also listed Victory Healthcare under the heading "All Other Names used by the Debtor in the last 8 years" in its Voluntary Petition in the United States Bankruptcy Court for the Northern District of Texas (the "Voluntary Petition"). Doc. No. 42-3. Therefore, Defendants maintain, Victory Parent is a party to and, in effect, signed the Settlement Agreement. Indeed, Robert N. Helms, Jr. ("Helms"), the former Chief Executive Officer of Victory Parent and manager of Victory Beaumont, who submitted an affidavit on behalf of Victory Parent in

_____

[1] At this point in the proceedings, only the TUFTA claim disputing the Settlement Agreement remains.

connection with the Response, also negotiated and signed the Settlement Agreement on behalf of Victory Healthcare. Moreover, Helms signed both the Assumed Name Certificate, wherein Victory Parent assumed the name Victory Healthcare on or about March 25, 2011, as well as the Voluntary Petition, in which Victory Parent presents itself to the United States Bankruptcy Court for the Northern District of Texas as having assumed the name Victory Healthcare. Assumed Name Certificate, Doc. No. 42-2, at 2; Voluntary Petition, Doc. No. 42-3, at 3.

Victory Parent submits no evidence denying its registration for the Assumed Name Certificate for Victory Healthcare, nor does it dispute that its assumed name, Victory Healthcare, appears as a signatory on the Settlement Agreement. Indeed, it explicitly states in its Response that "the Court may take judicial notice of the fact that Victory Parent filed an assumed name certificate for the trade name 'Victory Healthcare.'" Doc. No. 45, at 7. Nevertheless, Victory Parent argues that, because it contends that it did not participate in the execution of the Settlement Agreement, there is a conflict in the pleadings, and, thus, judgment on the pleadings is improper.

II. Analysis

Defendants move for judgment on the pleadings and seek dismissal of Victory Parent's claims under Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c); *Mayne v. Omega Protein Inc.*, 370 F. App'x 510, 514 (5th Cir. 2010); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002); *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914

4

F.2d 74, 76 (5th Cir. 1990); *see Great Plains Tr. Co.*, 313 F.3d at 312; *United States v. Renda Marine, Inc.*, 750 F. Supp. 2d 755, 763 (E.D. Tex. 2010), *aff'd*, 667 F.3d 651 (5th Cir. 2012), *cert. denied*, 569 U.S. 918 (2013).

A "judicially noticed fact" is one that "is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (citing FED. R. EVID. 201(b)); *Karch v. JPMorgan Chase Bank, N.A.*, No. 4:17-CV-00114, 2017 WL 1426755, at *2 (E.D. Tex. Apr. 20, 2017). Rule 12(c) motions are treated as a motion for judgment on the pleadings based on a failure to state a claim upon which relief can be granted. *Johnson v. Pharm. USA, Inc.*, 758 F.3d 605, 610 (5th Cir. 2014) (noting that motions to dismiss under Rule 12(c) are governed by the same standards applicable to motions under Rule 12(b)(6)); *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013); *Gentilello v. Rage*, 627 F.3d 540, 543-44 (5th Cir. 2010) ("We evaluate a motion under Rule 12(c) for judgment on the pleadings using the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim."); *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (same). The primary focus is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *United States v. 0.073 Acres of Land*, 705 F.3d 540, 543 (5th Cir. 2013); *Great Plains Tr. Co.*, 313 F.3d at 312; *Hughes*, 278 F.3d at 420. "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Tr. Co.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420). In making such a determination, the court is restricted to the pleadings and must accept all allegations as true. *Hughes*, 278 F.3d at 420 (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)); *see Great Plains Tr. Co.*, 313 F.3d at

312. Nevertheless, the court will not accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Tr. Co.*, 313 F.3d at 313.

The court may, however, consider documents referenced in a plaintiff's complaint and central to the plaintiff's claim and may take judicial notice of publicly filed documents when analyzing a Rule 12(c) motion for judgment on the pleadings. *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 685 (S.D. Tex.) (concluding that the court's consideration of documents attached to the complaint and public documents filed in another lawsuit did not convert a Rule 12(c) motion for judgment on the pleadings into one for summary judgment), *aff'd*, 582 F. App'x 279 (5th Cir. 2014); *see Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (citing *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)) ("[I]t is clearly proper . . . to take judicial notice of matters of public record."); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (noting that courts may consider "documents that are referred to in the plaintiff's complaint and [that] are central to the plaintiff's claim" when analyzing a Rule 12(c) motion); *Karch*, 2017 WL 1426755, at *2 (taking judicial notice of public records requested by the defendant including documents filed in other lawsuits by the plaintiff and public deed transfer records); *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 964 (S.D. Tex. 2016) ("Because these documents are matters of public record of which the Court may take judicial notice, the Court will consider these documents without converting the 12(c) Motion to a motion for summary judgment.").

Indeed, Secretary of State filings, such as the Assumed Name Certificate, have been considered in connection with Rule 12(c) motions, whereas affidavits have not. *See Vernon Feeders, LLC v. Cabaniss Dairy,* LLC, No. 7:13-CV-00069-O, 2013 WL 12137768, at *1 (N.D. Tex. July 9, 2013) (taking judicial notice of the plaintiff's Texas Secretary of State filings when

6

considering the defendant's motion to dismiss based on the fact that the plaintiff had forfeited its existence); *Petri v. Kestrel Oil & Gas Props., L.P.*, No. CIV.A. H-09-3994, 2011 WL 2181316, at *6 (S.D. Tex. June 3, 2011) (taking judicial notice of Texas Secretary of State filings when ruling on a motion to dismiss); *Coal. for an Airline Passengers' Inc. v. Delta Air Lines, Inc.*, 693 F. Supp. 2d 667, 675-76 (S.D. Tex. 2010) (concluding that courts may not consider affidavits that fall outside the exceptions for documents attached to the complaint or publicly available documents when reviewing Rule 12(c) motions, as recognized by the United States Court of Appeals for the Fifth Circuit).

In the present case, Defendants attached three exhibits to their Motion: (1) the Settlement Agreement; (2) the Assumed Name Certificate; and (3) the Voluntary Petition. Because the Settlement Agreement is referenced in Victory Parent's First Amended Complaint and is central to its TUFTA claim, the court will consider it. Because the Assumed Name Certificate is a Secretary of State filing and the Voluntary Petition was publicly filed in the Northern District of Texas, the court finds that it may take judicial notice of both and, therefore, both will be considered. Victory Parent attached one exhibit to its Response: Helms's affidavit. Because the affidavit is neither referenced in the First Amended Complaint nor a publicly filed document beyond Victory Parent's filing of the document in the case at bar, the court finds that the affidavit

does not fall within the Fifth Circuit's exceptions to considering documents outside the pleadings on a Rule 12(c) motion and, thus, will not consider the substance of the affidavit.[2]

A claim may be dismissed under Rule 12(c) "if a successful affirmative defense appears on the face of the pleadings." *United States v. GSD&M Idea City LLC*, No. 3:11-CV-1154-O, 2014 WL 11320447, at *3 (N.D. Tex. June 10, 2014) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)), *aff'd*, 798 F.3d 265 (5th Cir. 2015); *accord Jones v. Bock*, 549 U.S. 199, 215 (2007); *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003) (affirming the district court's dismissal of a claim on a judgment on the pleadings based on a successful affirmative defense); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyard,*

---

[2] Even if the court were to consider the affidavit, it is entirely self-serving and, under similar circumstances, courts have declined to view such affidavits as creating genuine issues of material fact. *See DelaHoussaye v. Morton Int'l Inc.*, 300 F. App'x 257, 258 (5th Cir. 2008) (concluding that a self-serving affidavit attached to a response to a Rule 12(c) motion that simply repeats the factual allegations of the complaint does not create a genuine issue of material fact, nor does it convert the Rule 12(c) motion into one for summary judgment, especially where the plaintiff's claims are barred by the defendants' affirmative defense); *accord Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440-41 (5th Cir. 2015) (finding that, on a Rule 12(c) motion, "affidavits . . . should not control to the extent they conflict with [a party's] allegations . . . we distinguish these affidavits from contracts and medical records"); *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 456 (7th Cir. 1998) (arguing that, when analyzing a 12(c) motion, "courts should also consider the type of document in which the statement is being made . . . For example, a written contract represents an agreement between the parties. Letters written by the defendant, however, may contain self-serving statements not constrained by negotiations . . . [these] statements should not have been presumptively taken as true"); *Johnson v. St. Barnabas Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010) (finding, on a Rule 12(c) motion, that plaintiff's self-serving statement that she received a letter on a certain day could not create a genuine issue of material fact against a mail receipt with a different typewritten date); *AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572, 578 (7th Cir. 1995) (finding that, on a Rule 12(c) motion, "affidavits do not create a factual issue concerning the existence of an extrinsic ambiguity [in a contract]").

Helms's affidavit is self-serving for several reasons. First, its sole purpose appears to be to contradict Defendants' allegations of weaknesses in Victory Parent's TUFTA claim, and there is no evidence in the record to support the assertions in the affidavit. Second, the affidavit was signed the exact same day the Response was filed, bolstering the affidavit's appearance as solely a mechanism to rebut Defendants' Motion. Third, the affidavit contradicts Victory Parent's claims, in that the affidavit states that Victory Parent will receive no benefit from the Settlement Agreement—yet, the crux of Victory Parent's TUFTA claim is a purported interest in receiving benefits from the Settlement Agreement. The court declines to consider the affidavit as it does not fall within the Fifth Circuit exceptions, yet even if the court were to consider it, for the reasons described above, it would not be sufficient to create a genuine issue of material fact.

*Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("[A] complaint that shows relief to be barred by an affirmative defense . . . may be dismissed for failure to state a cause of action."), *cert. denied*, 459 U.S. 1105 (1983). Indeed, under Rule 12(c), a district court may dismiss a claim with prejudice. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010); *Lyons v. Select Portfolio Servicing, Inc.*, No. 3:17-CV-3380-D, 2018 WL 2984866, at *1 (N.D. Tex. June 14, 2018). In its discretion, a court may grant a plaintiff leave to amend after denying a Rule 12(c) motion. *See Edionwe v. Bailey*, 860 F.3d 287, 296 (5th Cir. 2017) (affirming district court's grant of Rule 12(c) motion for judgment on the pleadings and accompanying denial of leave to amend), *cert. denied*, 138 S. Ct. 687 (2018); *Saleh v. Time Warner Cable*, No. 3:16-CV-2782-G (BN), 2017 WL 958614, at *1 (N.D. Tex. Mar. 13, 2017) (denying defendants' 12(c) motion for judgment on the pleadings but granting the plaintiff leave to amend).

A.    Estoppel and Ratification

Defendants pleaded the affirmative defenses of estoppel and ratification. Doc. No. 41, at 7, ¶¶ 2-3.[3] Because this is a diversity case and the Settlement Agreement is a contract, Texas contract law governs. *Int'l Ins. Co. v. RSR Corp.*, 148 F. App'x 226, 230 (5th Cir. 2005); *Finger Furniture Co. v. Commonwealth Ins. Co.*, 404 F.3d 312, 314 (5th Cir. 2005). Victory Parent's TUFTA allegation rests on the proposition that it is a creditor of Victory Beaumont and, therefore, is "entitled to receive court or administratively ordered . . . support." Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 24.002(4). The purpose of TUFTA "is . . . to protect creditors from being defrauded or left without recourse due to the actions of unscrupulous debtors." *Janvey v. Dillon Gage, Inc. of*

---

[3] Defendants do not raise ratification in their Motion, but they expressly pleaded it in their First Amended Answer to Victory Parent's First Amended Complaint ("Amended Answer") (#41). The court finds that the affirmative defense of ratification is sufficiently related to the affirmative defense of estoppel, which was raised both in the Amended Answer and in the Motion, such that the two should be considered together.

*Dallas*, 856 F.3d 377, 385 (5th Cir. 2017) (quoting *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 89 (Tex. 2015)).  Victory Parent maintains that it was a creditor of Victory Beaumont and that Defendants acted "unscrupulously" in negotiating the allegedly unreasonably low settlement at a time when Victory Beaumont was insolvent.  Nonetheless, because TUFTA's purpose is to protect creditors, "[a] creditor who ratifies or participates in a fraudulent transfer may be estopped from attacking the transfer."  *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 479 B.R. 405, 411 (N.D. Tex. 2012); *accord Sanford v. Martin*, 182 F.3d 914, 915 (5th Cir. 1999); *In re Harris*, No. 13-36395, 2016 WL 6127515, at *3 (Bankr. S.D. Tex. Oct. 20, 2016); *see In re Adelphia Recovery Tr.*, 634 F.3d 678, 691 (2d Cir. 2011) ("A fraudulent transfer is not void, but voidable; thus, it can be ratified by a creditor who is then estopped from seeking its avoidance.").

In the present case, the Assumed Name Certificate signed by Helms explicitly states that Victory Healthcare is the assumed name for Victory Parent; thus, the two are in fact one entity. Assumed Name Certificate, Doc. No. 42-2.  *See Vanderbilt Mortg. & Fin. v. Flores*, 692 F.3d 358, 376 (5th Cir. 2012) (holding that the district court has personal jurisdiction over a corporation because a common individual's filed assumed name certificates for various corporate entities render them all the same "corporate identit[y]"); *In re Passero*, 170 F. App'x 352, 354 (5th Cir. 2006) (concluding that where an individual signs an assumed name certificate, he "personally associate[s] himself" with the entity); *United States v. Burns*, 162 F.3d 840, 847 (5th Cir. 1998) (noting that corporations may not file assumed name certificates to "hid[e]" their involvement in certain activities), *cert. denied*, 526 U.S. 1076 (1999); *Featherston v. HSBC Card Servs., Inc.*, No. CIV.A H-09-3940, 2010 WL 3120053, at *2 (S.D. Tex. Aug. 9, 2010) (observing that an assumed name certificate listing the "same principals" shows that entities are the same corporate entity); *accord Austin Capital Collision v. Pampalone*, No. 03-15-00447-CV,

2016 WL 7187478, at *1 (Tex. App.—Austin 2016, no pet.). Here, not only does Helms present himself to the court as a representative of Victory Parent by the very fact that he submitted an affidavit in support of Victory Parent's Response, he also presented himself as a representative of Victory Parent to the Texas Secretary of State when he signed Victory Parent's Assumed Name Certificate for Victory Healthcare and to the United States Bankruptcy Court for the Northern District of Texas when he signed the Voluntary Petition.

Moreover, Helms is allegedly the decision-maker for the Victory parties and ratified the transfer of $700,000.00 via the Settlement Agreement. "The elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of the facts . . . ; and (3) with the intention of giving validity to the . . . act." *Sec. & Exch. Comm'n v. Helms*, No. A-13-CV-1036 (ML), 2015 WL 11255450, at *6 (W.D. Tex. July 2, 2015) (quoting *White v. Harrison*, 390 S.W.3d 666, 672 (Tex. App.—Dallas 2012, no pet.)); *Yturria v. Kerr-McGee Oil & Gas Onshore, LP*, No. 7:05-CV-181, 2006 WL 3227326, at *15 (S.D. Tex. Nov. 6, 2006) (citing *Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ)), *aff'd*, 291 F. App'x 626 (5th Cir. 2008). "A party ratifies an agreement when, after learning all of the material facts, he confirms or adopts an earlier act that did not then legally bind him and that he could have repudiated." *Helms*, 2015 WL 11255450, at *6 (quoting *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 788 (Tex. App.—Dallas 2002, pet. denied)). Here, Helms, who has years of experience in the healthcare industry and represented the Victory entities in related matters in other Texas courts, negotiated and personally executed the Settlement Agreement at issue. Therefore, his conduct satisfies the elements of the defense of ratification. Moreover, as Defendants argue in their Motion, Helms is a sophisticated businessman with experience in the healthcare industry, who was represented by counsel in the negotiation and execution of the

11

Settlement Agreement. As such, there is minimal risk that Helms was misled or misinformed. *See F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1300 (5th Cir. 1994) (citing *Dyer v. Shafer, Gilliland, David, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 478 (Tex. App.—El Paso 1989, writ denied)) ("Under Texas law, ratification is not binding upon a corporation if the directors were misled or misinformed."); *accord In re Franzin*, No. 02-32351-BJH-13, 2008 WL 5214036, at *50 (Bankr. N.D. Tex. Sept. 23, 2008); *see Quest Expl. & Dev. Co. v. Transco Energy Co.*, 24 F.3d 738, 742 n.5 (5th Cir. 1994) (citing *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1312 (5th Cir. 1983)) ("[V]alidity of a settlement is buttressed by [the] fact that [the] parties to the settlement are sophisticated and are represented by counsel."); *accord LaBouve v. Metso Minerals Indus., Inc.*, No. 4:17-CV-95-DMB-JMV, 2018 WL 1527838, at *4 (N.D. Miss. Mar. 28, 2018). Therefore, Helms's ratification of the Settlement Agreement is binding, and the affirmative defense prevails.

Given that Helms ratified the Settlement Agreement, the court turns to the question of whether Victory Parent is estopped from bringing its TUFTA claim. "[E]stoppel involves the reasonable reliance of one party on the conduct or statements of another party. If the relying party suffers harm as a result of its reliance, the law estops the other party from disavowing its earlier conduct or statements." *Fla. Dep't of Ins. v. Chase Bank of Tex.*, 274 F.3d 924, 933 (5th Cir. 2001), *cert. denied*, 535 U.S. 1097 (2002) (quoting *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 660 (5th Cir. 1999)); *see Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007). "The Fifth Circuit defines estoppel as 'any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law. It is grounded not on subjective intent but rather on the objective impression created by the actor's conduct.'" *Keymel Techs., LLC v. Zurich N.*

*Am. Ins. Co.*, No. CIV.A. 13-3004, 2013 WL 6858706, at *3 (E.D. La. Dec. 30, 2013) (quoting

*United States ex rel. United Rentals, Inc. v. Hartford Fire Ins. Co.*, 339 F. Supp. 2d 799, 803

(W.D. Tex. 2004)).  Equitable estoppel requires:

(1)     a material misrepresentation or concealment

(2)     made with actual or constructive knowledge of the true facts

(3)     with the intent that the misrepresentation or concealment be acted upon

(4)     by a third party without knowledge or means of knowledge of the true facts

(5)     who detrimentally relies or acts on the misrepresentation or concealment.

*Thomas v. Bob Mills Furniture Co.*, No. W-14-CV-219, 2016 WL 1464636, at *3 (W.D. Tex.

Apr. 13, 2016) (citing *In re Christopher*, 28 F.3d 512, 520 (5th Cir. 1994)); *see Schmidt v. J-Lu

Co.*, 598 F. App'x 257, 259 (5th Cir. 2015); *Matador Petroleum Corp.*, 174 F.3d at 660.

In the case at bar, because Helms holds himself out as a representative of Victory Parent

through his signature on the Assumed Name Certificate and Voluntary Petition, his ratification of

the Settlement Agreement estops Victory Parent from attacking the agreement as a fraudulent

transfer.  Helms, an experienced businessman in the healthcare industry, had full knowledge of

the facts and was represented by counsel at the time he signed the Settlement Agreement.

Defendants relied on Helms's representation on behalf of Victory Healthcare (and, therefore, in

effect, on behalf of Victory Parent) that he supported the settlement when he signed the Settlement

Agreement.  His choosing now to take a different position prejudices Defendants.  Even assuming,

*arguendo*, that Helms did not hold himself out as a representative of Victory Parent, because

Victory Parent assumed the name "Victory Healthcare," an entity which is an explicit signatory

to the agreement, Victory Parent is, in effect, a party to the agreement and, therefore, estopped

from bringing a TUFTA claim.  *In re Harris*, 2016 WL 6127515 (quoting *In re Adelphia Recovery*

13

*Tr.*, 634 F.3d at 691) ("A fraudulent transfer . . . can be ratified by a creditor who is then estopped from seeking its avoidance"); *SCTW Health Care Ctr., Inc. v. AAR Inc.*, No. 01-07-00762-CV, 2009 WL 3321399, at *12 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Marsh Inv. Corp. v. Langford*, 784 F.2d 184, 186 (5th Cir. 1986); *Thibaut v. Ourso*, 605 F. Supp. 1, 3 (M.D. La. 1981) (finding that parties who signed a settlement agreement were "estopped from contesting the validity of the settlement agreement"). Indeed,

> [C]reditors who are participants in an alleged fraudulent transfer, or who have ratified it, cannot then seek to have that transfer avoided. The rubrics under which that conclusion has been reached have varied slightly—"ratification," "consent," "estoppel," or "material participa[tion] in the transaction"—but the underlying point is the same. Creditors who authorized or sanctioned the transaction, or, indeed, participated in it themselves, can hardly claim to have been defrauded by it, or otherwise to be victims of it.

*First State Bank of Nw. Ark. v. McClelland Qualified Pers. Residence Tr.*, No. 5:14-CV-130 (MTT), 2015 WL 5595566, at *6 (M.D. Ga. Sept. 21, 2015) (quoting *In re Lyondell Chem. Co.*, 503 B.R. 348, 383-84 (Bankr. S.D.N.Y. 2014)). Because Victory Parent contends that it is a creditor of Victory Beaumont, but nonetheless signed the Settlement Agreement, it is estopped from seeking avoidance under TUFTA.

### B.   Release

Defendants also pleaded the affirmative defense of release and raised it again in their Motion. Doc. No. 41, at 7, at ¶ 10; Doc. No. 42, at 5. "A release is an agreement or contract in which one party agrees that a legal right or obligation owed by the other party is surrendered . . . . A release extinguishes a claim or cause of action and is an absolute bar to any right of action on the related matter." *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs.*, 416 S.W.3d 217, 226 (Tex. App.—Fort Worth 2013, no pet.) (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)). Texas courts have upheld broad releases of claims.

*See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 698 (Tex. 2000) (extending broad release of all claims as to professional services to include malpractice claims); *Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434 (Tex. 1997) (upholding broad savings clause from release that reads, "and any other matter relating to [the defendant's] relationship with [the plaintiff]"); *Staton Holdings v. Tatum, L.L.C.*, 345 S.W.3d 729, 736 (Tex. App.—Dallas 2011, pet. denied) (upholding "broad release of 'all future claims against [the defendant] related to [the subject matter of the litigation]'"); *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382, 385 (Tex. App.—Beaumont 2004, no pet.) (extending broad release of "any and all claims or causes of action of any nature whatsoever" beyond specific time period written in the agreement).

The Fifth Circuit has also upheld broad releases against claims of misrepresentation or fraud. "[I]f the contract was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue." *In re: Vioxx Prod. Liab. Litig.*, 661 F. App'x 831, 835 (5th Cir. 2016) (citing *Starr v. Fordham*, 420 Mass. 178, 188 (1995)); *see Boggan v. Data Sys. Network Corp.*, 969 F.2d 149, 153 (5th Cir. 1992) (concluding that short of being "duped into signing a final agreement that purported to be the agreement reached but in fact was something else," fraud is no defense to a contract voluntarily negotiated and executed).

Victory Parent does not claim that it was "duped," nor does it contend that the Settlement Agreement was not voluntarily negotiated and executed. To the contrary, its sole argument is that a dispute of fact exists regarding whether it participated in the Settlement Agreement because the agreement was signed by Victory Healthcare. As discussed above, however, Victory Healthcare is the assumed name of Victory Parent and the two are one entity. Helms, who has presented

himself to various Texas administrative agencies and courts as a representative of both Victory Parent and Victory Healthcare, executed the Settlement Agreement on behalf of Victory Healthcare. Victory Parent cannot now opt out of the release that its representative, Helms, signed simply because, in retrospect, it does not like the deal. *See Jarallah v. Sodexo, Inc.*, 452 F. App'x 465, 468 (5th Cir. 2011) (upholding settlement agreement and release when plaintiff entered into the agreement "freely and voluntarily"); *accord Vioxx*, 661 F. App'x at 834 (upholding conclusion that plaintiff's claims regarding the calculation of her settlement allocation were barred after she signed a broad release in order to participate in the settlement).

C. Accord and Satisfaction

Next, Defendants pleaded and raised in their Motion the affirmative defense of accord and satisfaction. Doc. No. 41, at 8, at ¶ 13; Doc. No. 42, at 7. "The accord and satisfaction defense rests upon a contract, express or implied, in which the parties agree to the discharge of an existing obligation by means of a lesser payment tendered and accepted." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 863 (Tex. 2000); *accord Tex. Cmty. Bank, N.A. v. Silver Scape Homes, LLC*, No. CV-H-14-296, 2016 WL 519545, at *7 (S.D. Tex. Jan. 8, 2016). To succeed on an accord and satisfaction defense, Defendants must establish: (1) the existence of a disputed claim; (2) a specific and intentional agreement by the obligor to the tender of funds for less than the amount claimed; and (3) a specific and intentional agreement by the obligee to the acceptance of the tender and relinquishment of any claims. *Hairston v. S. Methodist Univ.*, 441 S.W.3d 327, 336 (Tex. App.—Dallas 2013, pet. denied); *accord United States v. Broussard*, 102 F.3d 550, 551 (5th Cir. 1996) (citing *Fischbach & Moore, Inc. v. Cajun Power Co-op*, 799 F.2d 194, 198 (5th Cir. 1986)); *Westbank Riverboat Servs., Inc. v. Impala Warehousing US, LLC*, No. 14-CV-1025, 2015 WL 5059998, at *4 (E.D. La. Aug. 25, 2015). If proven, an accord and satisfaction defense

"would defeat recovery." *Genesis Marine, LLC of Del. v. Hornbeck Offshore Servs., LLC*, No. CV-17-6763, 2018 WL 2183486, at *3 (E.D. La. May 11, 2018).

Here, by the express terms of the Settlement Agreement, a dispute existed. In executing the Settlement Agreement, the parties "desire[d] to settle, compromise, and release all *disputes* between them . . . for good and valuable consideration . . . ." Doc. No. 42-1, at 1 (emphasis added). As to the latter two elements, pages two through five of the Settlement Agreement detail Defendants' payment to Victory – Houston and that such payment "irrevocably release[d] and forever discharge[d] Victory – Houston" from any actions whatsoever Defendants may bring. Doc. No. 42-1, at 2-5. The Settlement Agreement continues to describe the release of any claims by Victory – Houston "whatsoever . . . relating to or arising out of" the Settlement Agreement. Doc. No. 42-1, at 5-6. As discussed above, Victory – Houston was defined in the Settlement Agreement as "*Victory Healthcare*, and its affiliates and subsidiaries, including Victory Medical Center – Houston, . . . Victory Surgical Hospital – East Houston . . . , and *Victory Medical Center – Beaumont*." Doc. No. 42-1, at 1 (emphasis added). Thus, the court finds that Defendants have successfully established each element of their accord and satisfaction defense and, therefore, Victory Parent is barred from bringing its claim.

D.    Quasi-Estoppel

Finally, Defendants rely on the affirmative defense of quasi-estoppel. Defendants failed to raise the affirmative defense of quasi-estoppel in their responsive pleadings and raised it for the first time in their Motion. Doc. No. 40; Doc. No. 41; Doc. No. 42. This, however, is not fatal to the affirmative defense. "The Fifth Circuit has recognized that '[a]lthough failure to raise an affirmative defense under Rule 8(c) in a party's first responsive pleading generally results in a waiver . . . [w]here the matter is raised in the trial court in a manner that does not result in unfair

surprise . . . technical failure to comply with Rule 8(c) is not fatal.'" *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 491 (5th Cir. 2001) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)); *see Johnson*, 385 F.3d at 516 n.7 (quoting *Giles*, 245 F.3d at 491) ("Thus, a defendant does not waive an affirmative defense if he 'raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'"); *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. CIV-A-304-CV-1866-D, 2007 WL 2403656, at *10-11 (N.D. Tex. Aug. 23, 2007); *Swicegood ex rel. Swicegood v. Med. Protective Co.,* 2003 WL 22234928, at *9 n.16 (N.D. Tex. Sept. 19, 2003). In the present case, Defendants raised sixteen contractual affirmative defenses in their responsive pleadings, including estoppel, as well as a catch-all affirmative defense asserting that Victory Parent's claims are "contractually barred." Doc. No. 41, at 8, at ¶ 15. Therefore, the court finds that quasi-estoppel, although raised late, has not resulted in unfair surprise to Victory Parent. Moreover, Victory Parent was given the opportunity to respond to the defense of quasi-estoppel in its Response. Victory Parent also filed a sur-reply, in which it had another opportunity to respond to the quasi-estoppel defense (#53). Therefore, given the circumstances, Defendants' failure to plead the quasi-estoppel defense in a timely manner is not fatal.

"Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken . . . . The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez*, 22 S.W.3d at 864 (quoting *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994, writ denied)); *see Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied); *Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 346 (Tex.

App.—San Antonio 2007, pet. denied); *accord Stinnett v. Col. Interstate Gas Co.*, 227 F.3d 247, 258 (5th Cir. 2000); *Axis Surplus Ins. Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, No. CIV.A. H-11-3745, 2012 WL 1788171, at *4 (S.D. Tex. May 16, 2012). "The [quasi-estoppel] doctrine applies where a party accepts the benefits of a transaction, then takes an inconsistent position to avoid corresponding obligations or effects . . . . Quasi-estoppel does not require a showing of misrepresentation or detrimental reliance." *Yturria*, 2006 WL 3227326, at *13 (citing *Albrecht*, 878 S.W.2d at 240; *Vessels v. Anschutz Corp.*, 823 S.W. 762, 765 (Tex. App.—Texarkana 1992, writ denied)).

To prevail on a quasi-estoppel defense, Defendants "must prove: (1) [the plaintiff] acquiesced to or benefited from a position inconsistent with its present position, (2) it would be unconscionable to allow [the plaintiff] to assert rescission, and (3) [the plaintiff] had knowledge of all material facts at the time of the conduct on which estoppel is based." *Bank of Am., N.A. v. Prize Energy Res., L.P.*, 510 S.W.3d 497, 511 (Tex. App.—San Antonio 2014, pet. denied); *accord In re Willa Peters Hubberd Testamentary Tr.*, 432 S.W.3d 358, 368 (Tex. App.—San Antonio 2014, no pet.); *see Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015) (citing *Mulvey v. Mobil Producing Tex. & N.M. Inc.*, 147 S.W. 3d 594, 607 (Tex. App.—Corpus Christi 2004, pet. denied)).

Here, because Victory Healthcare is the assumed name of Victory Parent, the court finds that Victory Parent's present position, wherein it seeks avoidance of the Settlement Agreement, is inconsistent with its express acquiescence to the terms of the agreement at the time of execution. Victory Parent cannot now claim it was defrauded under TUFTA because Helms, a representative of its assumed name, Victory Healthcare (who has also served as a representative of Victory Parent itself), signed the very instrument that effectuated the transfer. Therefore, it would be

unconscionable to allow Victory Parent's TUFTA claim to proceed.  Further, as alleged in Defendants' Motion, Helms has years of experience in the healthcare industry and in related transactions.  Victory Parent has never alleged it did not have full knowledge of all material facts at the time of the Settlement Agreement, nor has it denied any allegation that it had such knowledge.  Therefore, Defendants can prevail on their quasi-estoppel defense.

E.   Victory Parent's Alleged Material Fact Disputes

Victory Parent's defense to Defendants' Motion rests on two propositions:  (1) Victory Parent did not participate in the Settlement Agreement, despite its assumed name and Helms's participation; and (2) Defendants' Motion is "really a no-evidence motion for summary judgment in disguise."  Doc. No. 45, at 7.  To refute the documents Defendants attached to their Motion and to support its position that disputed issues of material fact exist, Victory Parent submits Helms's affidavit.  Doc. No. 45-1.  For the reasons described above, the court has declined to consider the substance of the affidavit.

In *DelaHoussaye*, the Fifth Circuit confronted a similar circumstance.  300 F. App'x at 258.  In that case, the plaintiffs contended that the defendant's denial of the allegations in the complaint and the assertion of affirmative defenses created material fact disputes precluding a Rule 12(c) judgment on the pleadings.  The plaintiffs attached affidavits to their response, and then argued, based on the attached affidavits, that the district court should convert the defendant's Rule 12(c) motion into a motion for summary judgment.  The Fifth Circuit rejected the plaintiffs' argument.  "Even accepting the plaintiffs' factual allegations as true for purposes of the Rule 12[(c)] motion . . . we have already concluded that the plaintiffs' complaint failed to show that their claims were not barred . . . [and] [t]he affidavits merely repeat the factual allegations of the complaint . . . ."  *Id.* (citing *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007)); *see Van Duzer*, 582 F. App'x at 283 (concluding that the court's consideration of documents attached to the complaint and public documents did not convert a Rule 12(c) motion for judgment on the pleadings into one for summary judgment); *Morgan*, 172 F. Supp. 3d at 964 ("Because these documents are matters of public record of which the Court may take judicial notice, the Court will consider these documents without converting the 12(c) Motion to a motion for summary judgment.").

In this instance, Defendants' proffered exhibits—the Settlement Agreement, the Assumed Name Certificate, and the Voluntary Petition—all fall within the Fifth Circuit's exceptions for consideration of documents outside the pleadings. As such, the court's consideration of these documents does not convert the Motion into one for summary judgment. Defendants have additionally pleaded and raised five successful affirmative defenses, and the court finds that no disputed issues of material fact exist. Accordingly, Victory Parent's TUFTA claim is barred by the doctrines of ratification, estoppel, release, accord and satisfaction, and quasi-estoppel.

F.    Amendment

Although Victory Parent does not expressly seek leave to amend its First Amended Complaint in its Response, in the interest of final disposition, the court considers whether Victory Parent should be entitled to amend. "Whether leave to amend should be granted is entrusted to the sound discretion of the district court." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir.) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)), *cert. denied*, 537 U.S. 1044 (2002); *accord Marucci Sports, L.L.C. v. Nat'l Coll. Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Federal Rule of Civil Procedure 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C.*, 751 F.3d at 378 (quoting *Jones v. Robinson*

*Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009) ("[T]here is a strong presumption in favor of granting leave to amend . . . ."). A district court may, however, refuse leave to amend if the complaint as amended would be subject to dismissal. *Marucci Sports, L.L.C.*, 751 F.3d at 378; *Ackerson*, 589 F.3d at 208; *see Yee v. Baldwin-Price*, 325 F. App'x 375, 380 (5th Cir. 2009) ("Leave to amend may be denied on the basis of futility."); *SB Int'l, Inc. v. Jindal*, No. 3:06-CV-1174-G, 2007 WL 2410007, at *3 (N.D. Tex. Aug. 23, 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) ("Where a proposed amendment would be a futile act, a court does not abuse its discretion in denying leave to amend.").

In the present case, Victory Parent's claims are barred by the affirmative defenses of ratification, estoppel, release, accord and satisfaction, and quasi-estoppel. Further, Victory Parent was afforded an opportunity to amend its complaint after the court entered an Order dismissing several of its claims (#10). At the point the Motion was filed, only Victory Parent's TUFTA claim and Victory Parent and Victory Beaumont's claims for attorney's fees remained. Therefore, even viewing the facts in the light most favorable to Victory Parent, any proposed amended complaint would be futile.

G.     Defendants' Request for Attorney's Fees

In the event they were to prevail on their Motion, Defendants requested "an award of [their] costs and reasonable attorney['s] fees" under Texas Business and Commerce Code § 24.013. Doc No. 42, at 9. Under that provision, a "court *may* award costs and reasonable attorney's fees as are equitable and just." TEX. BUS. & COM. CODE § 24.013 (emphasis added); *see Janvey*, 856 F.3d at 392-93 (noting that the trial court has the "sound discretion" to award attorney's fees under TUFTA) (quoting *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex.

22

App.—Dallas 2007, no pet.)); *Williams v. Houston Plants & Garden World, Inc.*, 508 B.R. 11, 18 (S.D. Tex. 2014). Under the circumstances, the court declines to exercise its discretion. Therefore, Defendants' request for attorney's fees is DENIED.

III.  Conclusion

Consistent with the foregoing analysis, Defendants' Motion (#42) is GRANTED, apart from Defendants' request for attorney's fees, which is DENIED. Accordingly, Victory Parent's TUFTA claim is DISMISSED with prejudice. Because TUFTA was the only remaining claim, apart from Victory Parent and Victory Beaumont's claims for attorney's fees, an order of final dismissal will be entered separately.

SIGNED at Beaumont, Texas, this 17th day of July, 2018.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE